## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

TERRY BUTLER,

                **Plaintiff,**

    **v.**                                                    **1:12-cv-2743-WSD**

MIRIAM CARRERO, CRP
HOLDINGS A-2, SCOTT
PURCELL, HEATHER MARTIN,
TIFFANY MACBETH, and
JACKIE BARBOUR,

                **Defendants.**

## <u>OPINION AND ORDER</u>

This matter is before the Court on Defendants Miriam Carrero ("Carrero"), CRP Holdings A-2 ("CRP Holdings"), Scott Purcell ("Purcell"), Heather Martin ("Martin"), Tiffany Macbeth ("Macbeth"), and Jackie Barbour's ("Barbour") (collectively, "HPA Defendants") Motion to Dismiss [15] Plaintiff Terry Butler's ("Plaintiff" or "Butler") Complaint [3] and First Amended Complaint [10].  Also before the Court are Plaintiff's Motions to Amend his Complaint [23], [28], [48], [56]; Motion to Certify Class [26]; and Motion for Reconsideration [27] of the Court's January 3, 2013, Order denying Plaintiff's motion to appoint counsel. Also before the Court are Plaintiff's Motions to Compel Discovery [29], [46], [50];

Motions for Sanctions [30] and Default Judgment [54] for Defendants' alleged "discovery misconduct;" and "Motion for a Mandatory Settlement Conference" [43].

## I.   BACKGROUND

This is a case alleging discrimination and sexual harassment arising from Plaintiff's tenancy at Holland Park Apartments ("HPA"), an apartment complex in Lawrenceville, Georgia, that is owned and managed by the HPA Defendants.

In September 2010, Plaintiff contacted ProMove, Inc. ("ProMove"), an apartment locator company, seeking an apartment to rent in Georgia.  [28 at 29]. Plaintiff asserts that he told ProMove that he required a ground-floor apartment due to his mobility disability.  [28 at 29].  ProMove contacted HPA, and on September 12, 2010, Carrero, an HPA Leasing Agent, showed Plaintiff apartment 5102, a ground-floor apartment.  [28 at 30, 32].

Before executing a lease agreement, Plaintiff visited HPA again and spoke with Purcell, the HPA Property Manager, and Barbour, another HPA Leasing Agent.  Plaintiff asserts that Purcell and Barbour "stated to Plaintiff: 1) Can they pay Plaintiff to read them a bed time [sic] story.  2) Your ie Plaintiff, [sic] voice is so sexy.  3) I'd pay for more than that."  [10 at 4].

2

On September 27, 2010, Butler executed a lease agreement for apartment 7006 at HPA.[1]  [31 at 4].  Apartment 7006 is a terrace level apartment that requires navigating a flight of stairs to access.  [Id.].

After moving into the apartment, Plaintiff claims he became upset about the inaccessibility of his apartment, the noise of the neighboring children, and trash left outside of his apartment.  [10 at 3].  On October 13, 2010, Plaintiff submitted a complaint to HPA complaining of specific instances involving the noise and the trash and requesting that he be moved to another apartment.  [31 at 13].  Plaintiff did not complain about the inaccessibility of his apartment.

"Defendants"[2] offered to allow Butler to transfer apartments at a cost of $500, and refused Plaintiff's request to waive the transfer fee or allow him to pay the fee in installments.  [3 at 4; 10 at 1-2; 48 at 4].  Plaintiff claims that his request for an accommodation was denied because management became hostile and discriminatory due to his complaints and rejection of Purcell's advances. [28 at 13, 37].

---

[1]     It is not clear how or why Plaintiff agreed to rent apartment 7006 instead of 5102.  It appears that Purcell or Barbour at some point showed Plaintiff additional apartments available for rent at HPA, including unit 7006.

[2]     Plaintiff refers generally to "Defendants" throughout his filings and often fails to identify which defendant committed what allegedly wrongful conduct.

On November 5, 2010,[3] Plaintiff sent to "Laramar Inc., Corporate Office/Holland Park mgr. [sic]" a letter complaining about the noise, trash, and safety of his apartment and requesting to terminate his lease and to use his security deposit to cover the remainder of the lease.  [31 at 15-16].[4]  Plaintiff also commended Carrero's efforts to remedy his problems with the noise and trash.  [Id. at 16].  Plaintiff again did not mention the inaccessibility of his apartment.

Plaintiff did not pay rent for the month of November or tender the remaining one-third of his security deposit.  On November 8, 2010, Laramar Management Services ("Laramar"), HPA's management company, filed on behalf of HPA a dispossessory action against Butler in the Magistrate Court of Gwinnett County (the "Dispossessory Action").  [15.6; 28 at 13].[5]

---

[3]    Plaintiff's letter is dated October 25, 2010, but was signed by Plaintiff on November 5, 2010.

[4]    Plaintiff's lease agreement states that "no portion of the Security Deposit may be applied to rent due and payable under the Lease . . . ."  [31 at 5].  The Early Termination provisions in the lease agreement require that the renter (1) pay all monies due, (2) give 60 days notice, (3) pay all rent through the notice period, (4) pay an additional early termination fee, and (5) forfeit any security deposit. [Id. at 7].

[5]    Laramar Management Services as agent for Holland Park Apartments v. Terry Butler, No. 10m40218.  The Court may consider the copies of the documents in the Dispossessory Action and the subsequent State Court Action attached to Defendants' Motion to Dismiss because these documents are central to Plaintiff's claims and Plaintiff does not challenge their authenticity.  See, e.g., SFM Holdings, Ltd. v. Banc of Am. Secs., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010); see also Harris v. Ivax Corp., 182 F.3d 799, 802 n.2 (11th Cir. 1999) ("[A]

On November 19, 2010, Butler filed his answer in the Dispossessory Action and asserted a counterclaim against CRP Holdings and Macbeth for "emergency nuisance violations, violations of 'Article V' of the City of Lawrencevilles [sic] Property Laws and Ordinances," breach of rental agreement, breach of contract, breach of fiduciary duty, "failure to repair requested repairs/complaints," fraud, harassment, "tenant abuse" and discrimination.  [15.6 at 16-25].

On December 1, 2010, after conducting a hearing, the Magistrate Court issued a writ of possession to Laramar and denied Butler's counterclaims in the Dispossessory Action.  [Id. at 3].

On January 27, 2011, Butler filed a complaint with the U.S. Department of Housing and Urban Development ("HUD") alleging housing discrimination against CRP Holdings under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et seq.  [31 at 22].  HUD referred the complaint to the Georgia Commission on Equal Opportunity ("GCEO") for investigation.  [Id. at 22].  Butler amended his complaint twice, once to add "handicap" to the reasons for discrimination in his complaint, and once to add defendants Carrero, Barbour, Macbeth, and Martin, an HPA Property Accountant.  [Id. at 39].  On May 9, 2012, the complaint was reactivated by HUD due to GCEO's failure to investigate the complaint in a timely

_____

document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute.").

manner.  [Id. at 26], see also 24 C.F.R. 115.207(b).  On July 26, 2012, HUD issued its findings that there was no reasonable cause to believe that violations of the FHA had occurred.  [Id. at 47].

On March 4, 2011, Plaintiff filed in the State Court of Gwinnett County an action against Laramar and CRP Holdings asserting claims for breach of implied warranty of habitability, misrepresentation in advertising and sales promotion, strict liability negligence, breach of warranty, and wrongful withholding of security deposit (the "State Court Action").  [15.8 at 2].  On September 8, 2011, the court granted summary judgment for Laramar and CRP Holdings on the basis that Plaintiff's claims should have been brought as compulsory counterclaims in the dispossessory action.  [Id. at 3].

On August 8, 2012, Plaintiff initiated this action by submitting an Application to Proceed in District Court without Prepaying Fees or Costs [1].  On September 5, 2012, Magistrate Judge Walter E. Johnson found that Plaintiff met the financial requirements for *in forma pauperis* ("IFP") status, granted his request to proceed IFP pursuant to 28 U.S.C. § 1915(a), and Plaintiff's Complaint was submitted to this Court for a frivolity determination [2].

In his original *pro se* Complaint, Plaintiff asserted claims under the FHA and Title III of the Americans with Disabilities Act[6] ("ADA") against Carrero alleging that she discriminated against him by denying his requests for a ground-level apartment because of his mobility disability.

On September 7, 2012, the Court found Plaintiff had alleged sufficient facts in his Complaint to proceed on his FHA and ADA claims against Carrero, ordered that Plaintiff complete and return service forms, and that service be made by the United States Marshal Service. [4].

On October 9, 2012, Plaintiff filed his First Amended Complaint [10], as permitted by Federal Rule of Civil Procedure 15(a)(1), adding CRP Holdings, Purcell, Martin, Macbeth and Jackie Barbour as defendants, as well as additional claims for sexual harassment under the FHA.

On October 9, 2012, Plaintiff also filed his Motion for Appointment of Counsel [11], which the Court denied on January 3, 2013 [25].

On October 30, 2012, the HPA Defendants moved to dismiss Plaintiff's Complaint and First Amended Complaint [15].

---

[6]     The Court liberally construed Plaintiff's references to Title III of the Civil Rights Act of 1968 as alleging a violation of Title III of the ADA because Plaintiff has alleged disability-based discrimination in the two counts of his Complaint. The Court notes that the FHA is also known as Title VIII of Civil Rights Act of 1964.

On December 14, 2012, Plaintiff filed an amended complaint [23]. Because Plaintiff did not receive the Court's leave or written consent from the HPA Defendants to file an amended complaint, the Court ordered the Clerk of Court to correct the docket to construe Plaintiff's filing as a motion for leave to amend.

On February 2, 2013, Plaintiff again moved to amend his complaint, seeking to as defendants Shaun Donovan, Secretary of HUD, Carlos Asegueda, the Office of Fair Housing and Equal Opportunity (FHEO) Region IV Director, and Bonita Stanton-Galbreath, HUD investigator (collectively, "HUD Defendants"). [28]. Plaintiff asserts that the HUD Defendants violated 42 U.S.C. § 1983 and 42 U.S.C. § 3610(g)(1) during the investigation of his HUD complaint.[7]

On April 15, July 15, and July 26, 2013, Plaintiff moved to amend his complaint to add Dan Dretler ("Dretler"), Vice President of CRP Holdings, as a defendant. [48; 56; 58].

Construing his *pro se* filings liberally and as a whole, Plaintiff appears to assert claims for discrimination and sexual harassment under the FHA, violations of the ADA and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and state law claims for breach of implied warranty, breach of contract, constructive

---

[7]    42 U.S.C. § 3610(g)(1) requires, among others, that the Secretary of HUD notify a complainant of his reasonable cause decision within 100 days of the filing of a complaint.

eviction, breach of warranty of quiet possession, breach of implied covenant of good faith and fair dealing, wrongful eviction, fraud and negligent misrepresentation.

The Court first considers Plaintiff's motion to amend his complaint to add the HUD Defendants as defendants in this action.

## II.    DISCUSSION

### A.    <u>Plaintiff's Motion to Add the HUD Defendants</u>

Rule 20 specifies who may be joined as defendants in a particular case, and states that:

> Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a).

The Court finds that the HUD Defendants are not proper parties to be joined as defendants in this action.  This case involves alleged discrimination and harassment by the HPA Defendants that occurred from September to December 2010, while Plaintiff lived at HPA.  Plaintiff's proposed claims against the HUD Defendants arise from the investigation by HUD and GCEO, from January 27, 2011 to July 26, 2012, of Plaintiff's allegations against the HPA Defendants.

Plaintiff's proposed claims against the HUD Defendants do not arise out of the same transaction or occurrence as his claims against the HPA Defendants.  Plaintiff does not assert, and the facts do not support, that the HUD Defendants and the HPA Defendants are jointly or severally liable to Plaintiff, and Plaintiff fails to show that questions of law or fact common to the all defendants will arise in this action.  Simply put, Plaintiff's proposed claims against the HUD Defendants are separate and discrete issues unrelated to Plaintiff's assertions against the HPA Defendants in this action.[8]  Plaintiff's Motion to Amend to Add the HUD Defendants [28] is required to be denied.[9]

B.   HPA Defendants' Motion to Dismiss for Failure to State a Claim

1.   *Legal Standard*

The law governing motions to dismiss pursuant to Rule 12(b)(6) is well-settled.  Dismissal of a complaint is appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the

---

[8]   That the three additional "amendments" to Plaintiff's complaint filed after he moved to add the HUD Defendants do not include any assertions against the HUD Defendants, and that Plaintiff failed even to include their names in the case style on the subsequently-filed documents, support that Plaintiff's claims against the HUD Defendants are not related to the claims asserted against the HPA Defendants.

[9]   Because the Court finds that the HUD Defendants are not proper parties to be joined as defendants in this action, the Court does not consider whether leave should be granted to allow Plaintiff's proposed amendment under Rule 15 of the Federal Rules of Civil Procedure.

cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

In considering a motion to dismiss, the Court accepts the plaintiff's allegations as true and considers the allegations in the complaint in the light most favorable to the plaintiff. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007); see also Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."). The Court, however, is not required to accept a plaintiff's legal conclusions. See Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)), abrogated on other grounds by Mohamad v. Palestinian Auth., 132 S. Ct. 1702 (2012). Nor will the Court "accept as true a legal conclusion couched as a factual allegation." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Ultimately, the complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.[10]

---

[10] The Supreme Court explicitly rejected its earlier formulation for the Rule 12(b)(6) pleading standard: "'[T]he accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the

To state a claim to relief that is plausible, the plaintiff must plead factual content that "allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Plausibility" requires more than a "sheer possibility that a defendant has acted unlawfully," and a complaint that alleges facts that are "merely consistent with" liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (citing Twombly, 550 U.S. at 557). "To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims." Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1263 (11th Cir. 2004) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.") (citations omitted).[11]

Complaints filed *pro se* are to be liberally construed and are "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v.

---

plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Twombly, 550 U.S. at 577 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The Court decided that "this famous observation has earned its retirement." Id. at 563.

[11]     Federal Rule of Civil Procedure 8(a)(2) requires the plaintiff to state "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In Twombly, the Supreme Court recognized the liberal minimal standards imposed by Federal Rule 8(a)(2) but also acknowledged that "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555.

Pardus, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted). Nevertheless, a *pro se* plaintiff must comply with the threshold requirements of the Federal Rules of Civil Procedure.  "Even though a *pro se* complaint should be construed liberally, a *pro se* complaint still must state a claim upon which the Court can grant relief."  Grigsby v. Thomas, 506 F. Supp. 2d 26, 28 (D.D.C. 2007).  "[A] district court does not have license to rewrite a deficient pleading." Osahar v. U.S. Postal Serv., 297 F. App'x 863, 864 (11th Cir. 2008).

   2. *Analysis*

    a. Discrimination under the Fair Housing Act

  The FHA prohibits discrimination, on the basis of a disability, in the sale or rental of housing.  See 42 U.S.C. § 3604(f).  Discrimination prohibited by the FHA includes the refusal to make reasonable accommodations in the "rules, policies, practices, or services, when such accommodations may be necessary to afford [the handicapped individual an] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).  Specifically, a landlord is liable under the FHA if it "[1] refus[es] to make [2] reasonable accommodations in rules, policies, practices, or services, when such accommodations [3] may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling[.]"  Schwarz v.

City of Treasure Island, 544 F.3d 1201, 1218–19 (11th Cir. 2008) (first, third,

fourth, and sixth alterations in original) (quoting 42 U.S.C. § 3604(f)(3)(B)).

Plaintiff asserts that the HPA Defendants "denied his request to transfer to

an accessible apartment unit to accommodate his housing disability needs" and

"attempted to charge a special fee for accommodations to the disable [sic] Plaintiff

in the amount of $500."  [3 at 4; 10 at 1-2].

On October 12, 2013, Plaintiff sent to "Holland Park Staff in charge" his

"Formal Complaint," which states:

> Dear Staff,
>
> In the short time I have lived here from day one I have been made
> very uncountable [sic] with the noise of kids running up and down the
> stairs.  The trash has also caused a very nasty environment by the kids
> playing below my window and has become like a new dump.  Please
> move me to another apartment.

[31 at 13].  Plaintiff also states in his letter that "kids above the stairs was [sic]

eating candy and tossing the rapper's [sic] on the ground," and that "some-one

[sic] threw a full-soda [sic] can at [his] door."  [Id.].

On November 5, 2010, Plaintiff sent to "Laramar Inc., Corporate

Office/Holland Park mgr. [sic]" his "Complaint and 60 Day Notice to Quit," which

states:

> I have been seriously bother [sic] by the noise, abuse, and outrageous
> answers and treatment I get for complaining about the problems.

14

> Every day the kids where I live run from the 3rd floor to the bottom floor stomping as hard as they can on the stairs.  The kids also throw trash from the 3rd floor to the bottom making the place look like garbage site.  I did say please do not do that and that night some [sic] threw a soda can full of soda against my door and ran.  I told management and was told that if I wanted to move to another apartment it would cost $500.00 dollars.  Now I feel that I should not have to pay for what I was told would be a clean, quiet and safe place to live.  I feel by telling me this I have been taken advantage of and Holland Park has misrepresented what this company.  [sic]  . . .

> I also would like to let corporate know that my leasing specialist, ie [sic] Mrs. Miriam Carrero did a great job in attempting to correct the problem I been having here at Holland Park, but I have made up my mind to give my 60 day notice and move.

[31 at 15-16].

Plaintiff does not allege, and the documents he submitted do not support, that Plaintiff told the HPA Defendants at the time he made the request that he wanted to change apartments because of his mobility disability.  Rather, Plaintiff stated that he wanted to change apartments because of problems with his neighbors, noise and trash.[12]  That the HPA Defendants, unaware that Plaintiff was

---

[12]   See Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1206 (11th Cir. 2007) ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."); Assoc. Builders, Inc. v. Ala. Power Co., 505 F.2d 97, 100 (5th Cir. 1974) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint.  If the appended

requesting an accommodation because of his disability, told Plaintiff that there was a $500 charge to change apartments is not sufficient to support an FHA claim.  See Schwartz, 544 F.3d at 1219 ("Simply put, a plaintiff must actually request an accommodation and be refused in order to bring a reasonable accommodation claim under the FHA."); Hawn v. Shoreline Towers Phase 1 Condo. Ass'n Inc., 347 F. App'x 464, 468 (11th Cir. 2009) (Plaintiff's letter with unclear explanations to the nature and extent of his disability and inconsistent reasons for requesting an accommodation did not inform defendant of the necessity of the accommodation); Colon-Jimenez v. GR Mgmt. Corp., 218 F. App'x 2, 3 (1st Cir. 2007) ("A routine or 'mundane' request, such as a request to transfer to a different apartment, does not rise to the level of a request for a reasonable accommodation unless the plaintiff specifically explains 'how the accommodation requested is linked to some disability.'").  Plaintiff fails to allege facts sufficient to support a claim for discrimination under the FHA and this claim is required to be dismissed.

b.    Sexual Harassment under the Fair Housing Act

Section 818 of the Fair Housing Act, 42 U.S.C. § 3617, provides:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or

document . . . reveals facts which foreclose recovery as a matter of law, dismissal is appropriate.").

encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617.  Section 3604 prohibits, among others, discrimination on the basis of sex in the rental of housing.  41 U.S.C. § 3604.

Plaintiff asserts that "Defendant's [sic] stated to Plaintiff: 1) Can they pay Plaintiff to read them a bed time [sic] story.  2) Your ie Plaintiff, [sic] voice is so sexy.  3) I'd pay for more than that."  [10 at 4].  Plaintiff conclusorily asserts that "[t]he statements are clearly sexual in nature and inappropriate; for a [disability housing person] to have to be subjected to unwelcome sexual advances is a Violation Under Section 818 of the Fair Housing Act."  [Id.].

It is well-established that annoying or offensive conduct "does not involve the type of serious, persistent, and explicitly humiliating or threatening conduct that is actionable as sexual harassment," Tagliaferri v. Winter Park Hous. Auth., 486 F. App'x 771, 774 (11th Cir. 2012), and that "simple teasing, offhand comments, and isolated incidents (unless extremely serious)" are not sufficient to support a claim for sexual harassment, Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).[13]  "Sexual harassment constitutes sex discrimination only when

---

[13]     In sexual harassment cases under the FHA, courts often rely on sexual harassment cases arising under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e et seq., because the conduct at issue in the housing setting is similar to that in the working environment and similar interests are subject to legal protection

the harassment alters the terms or conditions of" the activity protected by the statute.  Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999) (discrimination alleged under Title VII).  Here, Purcell and Barbour's statements were, at most, arguably sexual in nature and the alleged harassment occurred once. While their statements may have been uncouth, Plaintiff fails to allege conduct that is "sufficiently severe and pervasive" to support a claim of sexual harassment.  See DiCenso v. Cisneros, 95 F.3d 1004 (7th Cir. 1996) (single incident of landlord's sexual harassment of tenant—vaguely inviting tenant to exchange sex for rent, while caressing tenant's arm and back—did not support claim for sexual harassment); cf. Mendoza, 195 F.3d at 1247 (in Title VII action, supervisor's acts of rubbing his hip against plaintiff's hip while touching her shoulder and smiling, looking at her groin area while making a sniffing sound, and "constantly" staring and following her, over an eleven-month period were not sufficiently severe and pervasive); Henderson v. Waffle House, Inc., 238 F. App'x 499, 502 (11th Cir. 2007) (in Title VII action, even if calling plaintiff "Dolly," commenting that he would get in trouble if he said why plaintiff's presence made him nervous, and

---

under both acts.  See, e.g., DiCenso v. Cisneros, 96 F.3d 1004 (7th Cir. 1996); cf. Tagliaferri, 486 F. App'x 771 (applying Title VII sexual harassment standards to sexual harassment claim under FHA, where parties agreed that sexual harassment under the FHA must be "sufficiently severe and pervasive" as in employment discrimination actions).

pulling plaintiff's hair were sexual in nature, the incidents did not rise to the level

of "sufficiently severe and pervasive").[14]

To the extent Plaintiff also alleges a claim for "quid pro quo" sexual

harassment under the FHA, Plaintiff fails to show that the HPA Defendants

conditioned his occupancy on compliance with their alleged sexual advances or

that he would have been offered an entry-level apartment only if he had consented

to Purcell's and Barbour's alleged sexual advances.  Tagliaferri, 486 F. App'x at

774 (plaintiffs' assertion that their lease was not renewed because of previous

sexual relationships with maintenance man did not state a claim for quid pro quo

harassment under FHA; plaintiffs did not allege that their lease would have been

renewed had they consented to unwelcome sexual advances); Honce v. Vigil,

1 F.3d 1085 (10th Cir. 1993) (tenant failed to state a claim for sexual harassment

under FHA where landlord did not refuse to rent mobile home to plaintiff or evict

any other tenants when they rejected his alleged sexual advances); Grieger v.

---

[14]      Plaintiff also asserts in his Response that Purcell "went out of his way to speak to Plaintiff and be noticed," that he "yelled out at Plaintiff, 'Ok!! See you soon!! Ok!  Take care!!,'" and that he told Plaintiff that he "should come in the office on Saturday because it will not be [sic] so many people here, and plus the [rental] application will take a couple of hours to fill out."  [16 at 7-9].  To the extent Plaintiff alleges that Purcell was "inappropriately and sexually coming on to him" and show that Purcell's "plan was to be alone with Plaintiff in a sexual manner," these statements do not involve conduct of a sexual nature and are not sufficient to support a claim for sexual harassment under the FHA.

Sheets, 689 F. Supp. 835 (N.D. Ill. 1988) (tenant stated a claim for sexual harassment under FHA where landlord allegedly demanded sexual favors from tenant and told her compliance was a condition of continued tenancy; when tenant refused, landlord harassed tenant by refusing to repair house, damaging the property, threatening not to renew lease and forcing tenant to give up dog). Plaintiff does not allege facts sufficient to support that the HPA Defendants coerced, intimidated, threatened, or interfered with Plaintiff's rights under the FHA.  See 42 U.S.C. § 3617; Sporn v. Ocean Colony Condo. Ass'n, F. Supp. 2d 244, 251 (D. N.J. 2011) ("Section 3617 does not, however, purport to impose a code of civility on those dealing with individuals who have exercised their FHA rights."); cf. Mendoza, 195 F.3d at 1245 ("Although Title VII's prohibition of sex discrimination clearly includes sexual harassment, Title VII is not a federal 'civility code.'").  Plaintiff fails to state a claim for sexual harassment under the FHA and this claim is required to be dismissed.

        c.     Violations of the ADA and the Rehabilitation Act

The ADA does not apply to residential facilities such as apartments.  See Regents of Mercersburg College v. Republic Franklin Ins. Co., 458 F.3d 159, 165 (3rd Cir. 2006) ("residential facilities such as apartments and condominiums are . . . not subject to ADA compliance"); Indep. Hous. Servs. of S.F. v. Fillmore Ctr.

<u>Assocs.</u>, 840 F. Supp. 1328, 1344 (N.D. Cal. 1993) ("apartments and condominiums do not constitute public accommodations within the meaning of the Act"). Holland Park is an apartment complex and the ADA therefore does not apply. Plaintiff has not, and cannot, state a claim against the HPA Defendants for violation of the ADA. This claim is required to be dismissed.

To the extent Plaintiff alleges a claim under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, Plaintiff does not allege that Holland Park is a program or activity receiving federal financial assistance. <u>See</u> 29 U.S.C. § 794 (prohibiting discrimination on the basis of a person's disability in "any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."). Plaintiff fails to state a claim for relief under Section 504 of the Rehabilitation Act and this claim also is required to be dismissed.

d.    <u>State law claims</u>

Plaintiff appears to assert claims under Georgia law for breach of implied warranty, breach of contract, constructive eviction, breach of warranty of quiet possession, breach of implied covenant of good faith and fair dealing, wrongful eviction, fraud and negligent misrepresentation. The Court has dismissed Plaintiff's federal claims. "A district court may decline to exercise supplemental

21

jurisdiction over a [state law] claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."  28 U.S.C. § 1367(c)(3).  "The decision on [whether to retain jurisdiction over the state-law claims] should be and is vested in the sound discretion of the district court."  Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1288 (11th Cir. 2002). See generally United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").  The Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial."  Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004) (per curiam) (citing L.A. Draper & Son v. Wheelabrator–Frye, Inc., 735 F.2d 414, 428 (11th Cir.1984)).  The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and these claims are dismissed without prejudice.[15, 16]

---

[15]   The Court has determined that Plaintiff fails to allege facts sufficient to support a viable federal claim and has declined to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  The Court need not, and does not, address the HPA Defendant's other arguments for dismissal based on *res judicata*, insufficient process and insufficient service of process.

[16]   Plaintiff seeks to add Dretler as a defendant in this action and to assert claims for violation of the FHA, ADA, and Rehabilitation Act against him based on the same conclusory assertions Plaintiff makes against the HPA Defendants. The Court has found that Plaintiff fails to allege facts sufficient to support his

### III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Amend his Complaint [28] to add the HUD Defendants is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss [15] is **GRANTED**.  This action is **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motions to Amend his Complaint [23], [48], [56]; Motion to Certify Class [26]; Motion for Reconsideration [27]; Motions to Compel Discovery [29], [46], [50]; Motions for Sanctions [30] and Default Judgment [54]; and "Motion for a Mandatory Settlement Conference" [43] are **DENIED AS MOOT**.

---

claims for violation of the FHA, and that Plaintiff has not, and cannot, assert a viable claim under the ADA or Rehabilitation Act.  Plaintiff's proposed amendment seeking to assert these claims against Dretler fails to allege any additional facts to support his claims.  Plaintiff's Motions to Amend to Add Dretler as a Defendant [48, 56] are denied as futile.  See, e.g., Forbus v. Sears Roebuck & Co., 30 F.3d 1402, 1405 (11th Cir. 1994) ("District Courts have broad discretion to grant or deny leave to amend.  In the absence of undue delay, bad faith, dilatory motive or undue prejudice, leave to amend is routinely granted.") (citing Foman v. Davis, 371 U.S. 178, 182 (1962)); Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1262-63 (11th Cir. 2004) ("[A] district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile. . . . [D]enial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal.").  Because the Court concludes that Plaintiff's proposed amendments would be futile, the Court does not consider whether Dretler would be properly joined as a defendant in this action.

**SO ORDERED** this 12th day of September, 2013.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE